**INLAND HARBOR HOMEOWNERS ASS'N, INC. v. ST. JOSEPHS MARINA, LLC**

[219 N.C. App. 348 (2012)]

INLAND HARBOR HOMEOWNERS ASSOCIATION, INC., Plaintiff v. ST. JOSEPHS MARINA, LLC, RENAISSANCE HOLDINGS, LLC, ST. JOSEPHS PARTNERS, LLC, DEWITT REAL ESTATE SERVICES, INC., DENNIS BARBOUR, RANDY GAINEY, THOMAS A. SAIEED, JR., TODD A. SAIEED, ROBERT D. JONES, and THE NORTH CAROLINA COASTAL RESOURCES COMMISSION, Defendants

No. COA11-715

(Filed 6 March 2012)

### 1. Waters and Adjoining Lands—bulkhead ownership—not a fixture

The trial court properly granted summary judgment for defendants in an action concerning ownership of a bulkhead where plaintiff argued that the bulkhead was a fixture and that plaintiff owned the property to which the fixture was attached. Plaintiff's argument did not justify reliance on an unpublished opinion; moreover, that opinion involved a bulkhead that supported an indoor swimming pool at a residence while this case involved a bulkhead used as a divider for real property that was partially submerged. Finally, plaintiff's assertion required that the deed and the intentions of the contracting parties be ignored.

### 2. Real Property—condominium plat—bulkhead—boundary rather than common area

The trial court properly granted summary judgment to plaintiff in an action concerning the ownership of a bulkhead where plaintiff contended that a recorded condominium declaration and condominium plat showed that it owned the bulkhead as a part of the condominium common areas. The bulkhead line and the common area were clearly defined on the condominium plat, with the bulkhead used as a boundary line that was not meant to be included in the common area.

### 3. Waters and Adjoining Lands—bulkhead ownership—amendment to condominium declaration—not a boundary agreement

The trial court did not err by granting summary judgment for defendants in a dispute over ownership of a bulkhead between a marina and a condominium homeowners association where plaintiff contended that an amendment to the condominium declaration created a boundary agreement. The amendment was clearly intended to define common areas among condominium owners and did not create a binding boundary agreement.

INLAND HARBOR HOMEOWNERS ASS'N, INC. v. ST. JOSEPHS MARINA, LLC

[219 N.C. App. 348 (2012)]

**4. Waters and Adjoining Lands— riparian rights—ownership of bulkhead—not established**

The plaintiff in a dispute over ownership of a bulkhead did not have riparian rights where it did not prove ownership of the bulkhead.

**5. Deeds— reformation denied—evidence of mutual mistake— not sufficient**

The trial court did not err by denying plaintiff's motion for judicial reformation of a deed in a dispute over ownership of a bulkhead between a condominium homeowners association and a marina. Although plaintiff's evidence of its mistaken belief about the amount of property involved in a prior exchange of parcels was convincing, plaintiff failed to establish clear, cogent, and convincing evidence of defendants' mistaken belief at the time of the exchange of parcels.

Appeal by Plaintiff from order entered 12 October 2010 by Judge W. Allen Cobb, Jr. in New Hanover County Superior Court. Heard in the Court of Appeals 9 November 2011.

*Clark, Newton & Evans, P.A., by Don T. Evans, Jr. and Seth P. Buskirk, for Plaintiff-Appellant.*

*Marshall, Williams & Gorham, LLP, by John. L. Coble and Williams Mullen, by Gilbert C. Laite, III and Kelly Colquette Hanley, for Defendants-Appellees.*

BEASLEY, Judge.

Inland Harbor Homeowners Association, Inc. (Plaintiff) commenced this civil action on 2 December 2009. Plaintiff filed an amended complaint on 27 January 2010 alleging several causes of action against Renaissance Holdings, LLC, Dewitt Real Estate Services, LLC, St. Josephs Partners, LLC, St. Josephs Marina, LLC, Randy Gainey, Dennis Barbour, Robert D. Jones, Thomas A. Saieed, Jr., and Todd A. Saieed (Defendants). Plaintiff sought, *inter alia*, (1) a declaratory judgment to determine ownership of the bulkhead which is the boundary between Plaintiff and Defendant St. Josephs Marina's property; (2) nuisance and trespass damages against St. Josephs Marina; and (3) judicial reformation of a deed. On 27 August 2010, Plaintiff filed its motion for partial summary judgment seeking declaration of ownership of the bulkhead and judicial reformation of

the deed. On 23 September 2010, Defendants filed their motion for partial summary judgment for the same causes of action, and for the nuisance and trespass claims. On 12 October 2010, the trial court entered the order of summary judgment which denied Plaintiff's motion for summary judgment and granted Defendants' motion. On 11 February 2011, Plaintiff voluntarily dismissed its final cause of action and filed notice of appeal on 7 March 2011.

Plaintiff and Defendants St. Josephs Marina and St. Josephs Partners, LLC own adjacent land in Carolina Beach, N.C. on the western side of the Myrtle Grove Sound. A portion of the subject property lies below the average high water mark and is completely submerged by water.

BWT Enterprises Inc. (BWT) was the record owner of the subject property and is the common predecessor in title to both Plaintiff and St. Josephs. In 1983, BWT owned a 5.8 acre tract of land (parent tract) adjacent to the Myrtle Grove Sound. Part of the parent tract was divided into two separate tracts. Tract 1 consisted of 1.44 acres which contained submerged land and Tract 2 consisted of 2.7 acres of dry land. Between 1984 and 1985, BWT built a bulkhead across the parent tract that divided Tract 1 and Tract 2. In 1984, BWT recorded a condominium plat (Condo Plat) which identified the "Bulkhead Line", common areas, and future development. Shortly after BWT recorded the Condo Plat, BWT also formed Plaintiff, Inland Harbor Homeowners Association Inc. BWT also recorded a "Declaration of Inland Harbor Condominiums Phase I" (Declaration). The Declaration designated part of Tract 1 to condominium ownership and future development.

In 1985, BWT formed the Inland Harbor Yacht Club Limited Partnership (Yacht Club) and BWT conveyed the parent tract to the Yacht Club, subject to the Declaration. At that point, the Yacht Club owned the original parent tract, except for one condominium unit that was sold when BWT owned the parent tract. Later that year, the Yacht Club conveyed the parent tract, less the condominium units that were sold, to Sundance Resorts, Ltd. (Sundance). Sundance executed a deed of trust to Branch Banking and Trust (BB&T) and in 1986 BB&T foreclosed and accepted a trustee's deed. After BB&T foreclosed, it obtained a Declaration of Title to Submerged Landscape for the submerged portions to the parent tract.

In 1989, BB&T conveyed the parent tract to FMS Development and Hyung Park (FMS and Park) and obtained a deed of trust. While

FMS and Park held title, they amended the Declaration by executing "Amendment to Declaration of Unit Ownership and Covenants, Conditions and Restriction of Inland Harbor" (Amendment). In 1992, FMS and Park deeded the parent tract back to BB&T in lieu of foreclosure. In 1992, BB&T subdivided the parent tract and conveyed it in portions. BB&T conveyed the common areas located in Tract 1 to Plaintiff and conveyed the remaining parent tract to Mona Faye Black *et al.* (Blacks). The Blacks then conveyed a .28 acre parcel on Tract 1 to Plaintiff. In 2004, the Blacks conveyed all of their interest to St. Josephs Partners LLC (Partners).

In 2004, Plaintiff and Partners entered into an exchange agreement where Plaintiff agreed to exchange its .28 acres in exchange for .21 acres of Partners land. Partners also agreed to construct a pool with amenities, and perform other property maintenance. Subsequently, Partners began commercial development of the property. Partners rebuilt the bulkhead and constructed docks and marina facilities on the property. Partners applied for and was granted an easement over the submerged land with the boundaries running along the bulkhead. Plaintiff believes that it owns the bulkhead and the State improperly gave Partners an easement.

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 353 (2009) (internal quotation marks and citations omitted). "We review a trial court's order granting or denying summary judgment *de novo.*" *Id.* at 337, 678 S.E.2d at 354.

Plaintiff argues that the trial court erred by determining that Plaintiff did not own the bulkhead. We disagree.

"In construing a deed description it is the function of the court to determine the true intent of the parties as embodied in the entire instrument." *Board of Transportation v. Pelletier*, 38 N.C. App. 533, 536-37, 248 S.E.2d 413, 415 (1978). "The intention of the parties as apparent in a deed should generally control in determining the property conveyed thereby. But, if the intent is not apparent from the deed resort may be had to the general rules of construction." *Id.* at 537, 248 S.E.2d at 415. "However, there are instances in which consideration should be given to the instruments made contemporaneously therewith, the circumstances attending the execution of the deed, and to

the situation of the parties at the time." *Smith v. Smith*, 249 N.C. 669, 675, 107 S.E.2d 530, 675 (1959). "[W]here lots are sold by reference to a recorded plat, the effect of reference to the plat is to incorporate it in the deed as a part of the description of the land conveyed." *Kelly v. King*, 225 N.C. 709, 716, 36 S.E.2d 220, 224 (1945). In the case of boundary disputes,

> course and distance govern unless there be in the deed some more certain description by which one or both may be controlled. The terminus of a line must be either the distance called for in the deed, or some permanent monument which will endure for years, the erection of which was contemporaneous with the execution of the deed.

*Brown v. Hodges*, 232 N.C. 537, 541, S.E.2d 603, 606-07 (1950).

[1] Plaintiff presents several arguments in support of its ownership of the bulkhead. First, Plaintiff argues that the bulkhead is properly categorized as a "fixture" and since it owns the property that the "fixture" is attached to, it also owns the bulkhead. Plaintiff's argument hinges on our decision in *Burek v. Mancusco*, 189 N.C. App. 209, 657 S.E.2d 446 (2008) (unpublished). Before we address this argument on its merits, we first deal with Plaintiff's reliance on an unpublished opinion. "Citation to unpublished authority is expressly disfavored by our appellate rules but permitted if a party, in pertinent part, 'believes . . . there is no published opinion that would serve as well' as the unpublished opinion." *State ex rel. Moore Cty. Bd. of Educ. v. Pelletier*, 168 N.C. App. 218, 222, 606 S.E.2d 907, 909 (2005) (quoting N.C. R. App. 30(e)(3)). In this case, Plaintiff's argument does not justify reliance on an unpublished opinion, and we remind Plaintiff that "citation to unpublished opinions is intended solely in those instances where the persuasive value of a case is manifestly superior to any published opinion." *Id.*

In *Burek*, an unpublished opinion, this Court dealt with a bulkhead that supported an indoor swimming pool at a residence and the present case deals with a bulkhead used as a divider of real property that is partially submerged. Moreover, the Court in *Burek* limited the scope of classifying the bulkhead as a fixture. *See Burek*, 189 N.C. App. at 209, 657 S.E.2d at 446 ("Clearly, a bulkhead, under this definition, is a fixture due to its annexation to the land."). Finally, accepting Plaintiff's assertion would require us to ignore the deed and intentions of the contracting parties. Accordingly, we reject Plaintiff's contention that the bulkhead is properly classified as a fixture.

**[2]** Second, Plaintiff argues that it owns the bulkhead because the Declaration and Condo Plat show that the Bulkhead is a part of the condominium common areas. Plaintiff contends that a reading of the Declaration and the Condo Plat show BWT's intent to keep the bulkhead with Tract 1. Plaintiff relies on the following language in the Declaration that describes Tract 1.

> The above description for purposes of the Declaration to which it is attached as an Exhibit, *is to be deemed to include the structure of the bulkhead along which some of the boundary lines recited above lie,* and being all of the property shown and described (including future development) in Unit Ownership Book 6, Page 195, New Hanover County Registry. (emphasis added).

The Declaration description, standing alone, shows an intention to include the bulkhead in Tract 1, but a reading of the Condo Plat shows a contrary intent.

In this case, absent a definite description in the deed, the "Bulkhead Line" and "Common Area" are clearly defined on the Condo Plat. The bulkhead is used as a boundary line, and not meant to be included in the designated common area as Plaintiff suggests. Because a reading of the Declaration and the plat create ambiguity as to the intent of BWT, Plaintiff's argument, without more, does not support BWT's intent to include the bulkhead in the common area where the plat shows a clear intention to separate the bulkhead and the common area. Further, Plaintiff argues the Declaration's references to a yacht club and boat dock further prove that the bulkhead is part of the condominium property. This argument is not persuasive. When the Declaration was executed, BWT owned the entire parent tract. Moreover, BWT's clear intent to construct a yacht club cannot give rise to an inference that BWT intended the bulkhead to be included wholly on Tract 1 on our reading of the Declaration and Condo Plat, where the plat shows a clear intent to divide the property using the bulkhead as the dividing line. Based on our reading of the Declaration and the Condo Plat, we hold that Plaintiff's evidence does not show BWT's intention to convey the bulkhead with Tract 1 excluding the bulkhead from the boundary rule in *Brown* and transferring ownership to Plaintiff through its acquisition of the common area.

**[3]** Alternatively, Plaintiff argues that the Amendment is a boundary agreement which is binding upon St. Josephs Marina. Plaintiff contends that the Amendment, recorded while FMS and Park owned the

parent tract, supports the predecessors' intent to create a boundary agreement. The Amendment defined the common areas and facilities and included the bulkhead as part of the facilities. Plaintiff relies on *Smith v. Digh*, 9 N.C. App. 678, 117 S.E.2d 321 (1970) to support this assertion. Unlike *Smith*, here, the language of the amendment does not show a clear intention to define boundaries of the disputed area. A reading of the Amendment clearly shows that FMS was attempting to define common areas among condo owners, and did not intend to create a boundary agreement. The Amendment states,

> "Common Areas and Facilities" (hereinafter, "Common Property") means the portion of the condominium property owned in common by all of the Unit Owners . . . include the follow ing . . . Bulkhead, deadmen and all supporting components of the bulkhead.

Moreover, the Amendment also states that this above mentioned section was an amendment to section 3B of the original declaration. Section 3 in the original declaration section is titled "Definitions." Section 3B is clearly intended to define the common area and we refuse to interpret this language as creating a binding boundary agreement where the intentions of the predecessor are clear and unambiguous. Accordingly, Plaintiff's argument is overruled.

**[4]** Next, Plaintiff argues that the trial court erred by concluding that it had no riparian rights. We disagree.

Plaintiff's argument is premised on ownership of the bulkhead. "A riparian proprietor is an owner of land in actual contact with the water; proximity without contact is insufficient. An indispensable requisite of the riparian doctrine is actual contact of land with water." *Young v. Asheville*, 241 N.C. 618, 622, 86 S.E.2d 408, 411 (1955). Because we have concluded that Plaintiff did not prove ownership of the bulkhead, we further hold that Plaintiff has no riparian rights.

**[5]** Finally, Plaintiff argues that the trial court erred by denying Plaintiff's motion for summary judgment on Plaintiff's claim for judicial reformation. We disagree.

"Where a deed fails to express the true intention of the parties, and that failure is due to the mutual mistake of the parties, or to the mistake of one party induced by fraud of the other, or to the mistake of the draftsman, the deed may be reformed to express the parties' true intent." *Durham v. Creech*, 32 N.C. App. 55, 58-59, 231 S.E.2d 163, 166 (1977). When a party asserts mutual mistake as the basis for judi-

cial reformation, "[t]he evidence presented to prove mutual mistake must be clear, cogent and convincing, and the question of reformation on that basis is a matter to be determined by the fact finder." *Smith v. First Choice Servs.*, 158 N.C. App. 244, 250, 580 S.E.2d 743, 748 (2003). "[B]ecause mutual mistake is one that is common to *all the parties to a written instrument*, the party raising the defense must state with particularity the circumstances constituting mistake as to all of the parties to the written instrument." *Van Keuren v. Little*, 165 N.C. App. 244, 247, 598 S.E.2d 168, 170 (2004) (internal quotation marks and citation omitted).

In preparation for litigation about the ownership of the bulkhead, Plaintiff discovered that it mistakenly conveyed property to Partners in the 2004 exchange of parcels. In support of its claim of mutual mistake, Plaintiff failed to offer clear, cogent, and convincing evidence of Partners' mistake. Plaintiff's affidavit from its attorney proves that it was aware at the time of the exchange that the vesting deed and the surveyor's description gave different descriptions, but both descriptions purported to convey Plaintiff's .28 acres. Plaintiff relied on the description in the vesting deed and unfortunately, Plaintiff gave more than the .28 acres that it contemplated at the time of the exchange. Although convincing evidence of Plaintiff's mistaken belief, Plaintiff's evidence fails to establish clear, cogent, and convincing evidence of Partners' mistaken belief at the time of the exchange. Accordingly, Plaintiff's final argument is overruled.

Affirmed.

Judge STEELMAN concurs.

Judge GEER concurs in result only.