Paradigm Fin. Grp., Inc. v. Church, 2014 NCBC 33.

STATE OF NORTH CAROLINA

COUNTY OF SURRY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 357

PARADIGM FINANCIAL GROUP, INC., )
)
)
Plaintiff, )
)
v. )
)
CLAUDE T. CHURCH and )
CATHERINE H. CHURCH, )
)
Defendants. )
)

ORDER

{1}     THIS MATTER is before the court on Defendants' Motion for Reconsideration of Court's Summary Judgment Order ("Motion for Reconsideration"), pursuant to Rule 54 of the North Carolina Rules of Civil Procedure ("Rule(s)"), and Defendants' Motion to Amend Answer ("Motion to Amend"), pursuant to Rule 15.  For the reasons stated below, the Motions are DENIED.

> *Blanco Tackabery & Matamoros, P.A. by Peter J. Juran and Toni J. Grace for Plaintiff.*

> *Tuggle Duggins, P.A. by Denis E. Jacobson, Jeffrey S. Southerland, and Sarah J. Hayward for Defendants.*

Gale, Judge.

## I.     CASE HISTORY

{2}     This action arose out of an attempted sale of a business and real property, for which Plaintiff Paradigm Financial Group, Inc. ("Paradigm" or "Plaintiff") was broker.  Paradigm now seeks its commission.

{3}     In early December 2013, Paradigm and Defendants Claude T. Church and Catherine H. Church ("the Churches" or "Defendants") filed cross-motions for

summary judgment on Plaintiff's breach of contract claim.[1]  Following full briefing and a hearing on the summary judgment motions, the court issued a ruling which construed the contracts between the Parties to provide that Plaintiff is entitled to a minimum commission unless the contract is unenforceable because Plaintiff was an undisclosed dual agent.  *Paradigm Fin. Grp., Inc. v. Church*, 2014 NCBC LEXIS 15 (N.C. Super. Ct. May 7, 2014).  That issue was reserved for trial.

{4}     Defendants have now moved the court to (1) reconsider its ruling, and (2) allow Defendants to amend their answer to assert an affirmative defense of mutual mistake.  The Motions have been fully briefed and are ripe for disposition. In accordance with Rule 15.4(a) of the General Rules of Practice and Procedure for the North Carolina Business Court, the court decides these Motions without hearing or oral argument.

## II.     FACTS

{5}     The court incorporates its more complete factual summary from its previous order, *Paradigm Fin. Grp.*, 2014 NCBC LEXIS 15, at *3–9, also available at http://www.ncbusinesscourt.net/.

{6}     Because they are central to the pending Motions, the court again recites portions of two paragraphs from the Marketing and Service Agreement ("MSA") between the Parties, which provide:

> 10.     For services rendered by [Paradigm] under this Agreement, [the Churches] shall pay to [Paradigm] a commission in cash to a certain percent or percentage of the Sale Price of said Business or Related Business: . . . (A) 10% of the first million, 8% of the second million, 6% of third million, 4% of the fourth million as described in [P]aragraph 13 below[;  and] (B) In no event shall the commission payable to [Paradigm] be less than $125,000 (minimum commission). . . .
>
> 11.     The commission described in Paragraph 10 shall be earned by and payable to [Paradigm], in cash, upon the occurrence of any of the following events: . . . (C) [Paradigm] obtains an offer to purchase the

---

[1] At the same time, the parties filed cross-motions for summary judgment in a separate case between Defendants and their prospective buyer, Heron Bay Acquisition, LLC.  *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, No. 12 CVS 5505 (Guilford County) (N.C. Super. Ct.) (hereinafter "the *Heron Bay* case").  The court refers to the prospective buyer as "Heron Bay."

Business upon terms and conditions specified in Paragraph 1 or upon other terms and conditions acceptable to [the Churches] from a ready, willing and able prospective purchaser[;] (D) [the Churches] accept[] in writing an offer from a prospective purchaser and [the Churches] then fail[] to complete the sale of the Business.

(MSA ¶¶ 10–11.)

{7} While ruling in Defendants' favor in the *Heron Bay* case as to whether they had the right to terminate the sales contracts with Heron Bay, in this action, the court rejected Defendants' contract construction that Plaintiff was not entitled to any commission following that termination. First, Defendants argued that no commission is due because the sale on which it is based did not close, and the MSA defines "Sale Price" as sales proceeds actually paid. When the sale did not close, according to Defendants, the Sale Price was zero, and any percentage of zero is zero. (MSA ¶ 13.) The court found this construction to be inconsistent with Paragraphs 10(B) and 11(D), which together provide for a minimum commission in a stated amount and expressly trigger a commission where Defendants fail to close a sale based on an offer they had accepted. Second, Defendants made and the court rejected the contention that the "ready, willing and able" condition expressly stated in Paragraph 11(C) also controlled Paragraph 11(D).

{8} When ruling in Plaintiff's favor on the cross-motions for summary judgment, the court held that Defendants had failed to develop or forecast evidence adequate to proceed on their defense of duress and estoppel by misrepresentation, based on their allegations that Plaintiff's agent had induced Defendants to believe that no commission would be owed unless a sale subject to the MSA was actually completed. *Paradigm Fin. Grp.*, 2014 NCBC LEXIS 15, at *14–15. Defendants contend that this finding does not preclude them from pursuing a separate defense based on the Parties' mutual understanding that no commission would be paid absent a closing. Defendants now seek to amend their answer to add this defense.

## III.    ANALYSIS

### A. Motion for Reconsideration

{9} Defendants now attack the court's contract construction with arguments that they contend could not or need not have been earlier raised in their summary judgment filings because the court's contract construction could not have been anticipated.

{10} Defendants first argue that the court's construction could not have been anticipated because Plaintiff never requested a minimum commission, instead basing its argument for a percentage commission on Defendants' "wrongful" termination of its sales contracts with Heron Bay. Plaintiff's strategy, Defendants contend, reflects Plaintiff's belief that a commission was conditioned on the Heron Bay sales contracts closing. That position is belied by the pleadings. It is true that Plaintiff did not, in its Amended Complaint, expressly state a claim for $125,000, the minimum commission specified in Paragraph 10(B), as an alternative to its claim for $164,000, the amount calculated pursuant to the formula in Paragraph 10(A). The Amended Complaint does, however, include a separately numbered paragraph expressly requesting a commission pursuant to Paragraph 11(D). (Am. Compl. ¶ 22.) Defendants were obviously on notice that Plaintiff expected a commission even though the sales contracts did not close, as they included an affirmative defense in their original answers that seeks to estop Plaintiff from recovering on that basis. (Answer, Third Affirmative Defense; Answer to Am. Compl., Third Affirmative Defense.)

{11} Defendants also attack the court's contract construction as both illogical and inconsistent with the Parties' intent. They argue that allowing Plaintiff to pursue a minimum commission is inconsistent with a proper construction of Paragraph 11(D), which requires that each of its two conditions—that Defendants first accept an offer and second fail to complete the sale—must each occur during the MSA term. In support, Defendants note that the MSA had an initial term ending on September 8, 2010, which was, by agreement, extended to

September 8, 2011, but not thereafter. Defendants accepted the written offer from Heron Bay on June 17, 2011, but did not terminate the sales contracts until February 17, 2012.

{12} In an attempt to demonstrate that the court's construction is illogical, Defendants posit a series of hypotheticals that the court finds inapposite and unpersuasive. The court construes the contract to contemplate a commission paid after expiration of the MSA's listing period under Paragraph 11(D), where Defendants accepted an offer from a prospective purchaser during the term of the MSA and thereafter took affirmative action to fail to complete the sale, even if that action was after the MSA's term expired. When accepting an offer in accord with Paragraph 11(D), Defendants were committed to pay either a percentage commission if the sale was completed or the minimum commission pursuant to Paragraph 11(D) if Defendants themselves failed to complete the sale. Defendants' construction, that they could accept an offer consistent with Paragraph 11(D) and then escape commission by terminating the sale outside the MSA's exclusive listing term, is neither fair nor logical.

{13} The Motion for Reconsideration is DENIED.

## B. Motion to Amend

{14} Under Rule 15, leave to amend "shall be freely given where justice so requires." N.C. R. Civ. P. 15. However, a court may deny a motion for leave to amend a pleading based on the movant's "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice and futility of the amendment." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 89, 665 S.E.2d 478, 490 (2008) (quoting *Nationsbank of N.C., N.A. v. Baines*, 116 N.C. App. 263, 268, 447 S.E.2d 812, 815 (1994)).

{15} The Motion to Amend seeks to add a defense of mutual mistake based on the assertion that Paragraph 10(B) and Paragraph 11(D), as the court has construed them, do not conform to the Parties' mutual understanding. Although additional affidavits have been submitted, the evidence offered in support of the

Motion to Amend is essentially the same evidence the court earlier determined was not sufficient to support a defense of duress and estoppel based on misrepresentation.

{16}  "[B]ecause mutual mistake is one that is common to *all the parties to a written instrument*, the party raising the defense must state with particularity the circumstances constituting mistake as to all of the parties to the written instrument." *Inland Harbor Homeowners Ass'n v. St. Josephs Marina, LLC*, ___ N.C. App. ___, 741 S.E.2d 392, 394, (quoting *Van Keuren v. Little*, 165 N.C. App. 244, 247, 598 S.E.2d 168, 170 (2004) (internal quotations and emphasis in original)), *petition for disc. rev. denied*, 366 N.C. 595, 743 S.E.2d 187 (2013).  "The evidence presented to prove mutual mistake must be clear, cogent and convincing . . . ." *Id.* (quoting *Smith v. First Choice Servs.*, 158 N.C. App. 244, 250, 580 S.E.2d 743, 748 (2003) (internal quotations omitted)).

{17}  In opposing summary adjudication against their defense of duress and misrepresentation, Defendants catalogued evidence which they contend reflects their understanding that no commission would be paid unless a sale actually closed. After the court rejected an argument that Plaintiff induced this understanding through misrepresentation or duress, Defendants now argue that the evidence also shows that Plaintiff shared a mutual understanding.

{18}  In support of their argument, Defendants point to the following deposition testimony by Plaintiff's agent, Mr. Scott[2]:

> Q. So if Mr. Church had sold the business for a million dollars, Paradigm would still get $125,000, right?
>
> A. Correct.  That is based on – in the event the business is sold and the real estate is retained by the owner.
>
> Q. Okay.  Show me where in [P]aragraph 10 it says that?
>
> A. Well, just – well, I'm just saying as to how I came up with that figure.

---

[2] Mr. Scott testified as Paradigm's Rule 30(b)(6) deponent for this case.

Q. Oh, okay.  Did you tell Mr. Church how you came up with that figure?

A. I believe I did.

Q. Do you recall telling him that?

A. I believe I did tell him that because I said the real estate might not sell.

(Paradigm 30(b)(6) Dep. 100:17–101:7.)

{19}   While this testimony may reflect Mr. Scott's understanding that a lesser commission would be owed if the business was sold without the real estate, the court does not believe it further constitutes clear, cogent, and convincing evidence of Mr. Scott's understanding that no commission would be paid if there were no sale at all, and that Paragraph 11(D) applies only if a sale actually closes. The fact that Plaintiff has consistently pursued its claim where there has been no closing suggests otherwise.  Mr. Scott's recent affidavit is also to the contrary. Defendants' strongest evidence to support Plaintiff's understanding is that Mr. Church testified that he and Mr. Scott had a "[v]erbal conversation that . . . when this company was sold, not before . . . then [Mr. Scott] would be entitled to his commission."  (Church Dep. vol. II 201:25–202:9, July 24, 2013.)  This may be clear evidence of Mr. Church's understanding, but a unilateral misunderstanding is not enough, and the testimony is not clear, cogent, and convincing evidence that Mr. Scott had the same understanding.

{20}   Clearly, Defendants have been aware that Plaintiff seeks to secure a commission under either Paragraph 11(C) or Paragraph 11(D), knowing that the Heron Bay sales contracts have not and will not close.  Defendants included a defense that Plaintiff should be estopped from any such recovery because it induced Defendants to believe no commission would be owed without a completed sale. Those conflicting contentions were clear during the course of discovery.  They were apparent when the Parties extensively briefed and argued their cross-motions for summary judgment.

{21}     The court concludes, in its discretion and upon its review of the fully developed record, that Defendants have not forecasted evidence adequate to sustain their burden of proving a clear, cogent, and convincing mutual mistake of fact. Thus, an amendment adding that defense would be futile.  The court further concludes, in its discretion and upon its review of the fully developed record, that allowing an amendment would be unfairly prejudicial at this late stage of the case, where summary judgment Motions have been briefed, argued and ruled upon, the matter has been set for trial, and certain pretrial submissions, such as jury instructions, have already been submitted.  Defendants had a clear opportunity to raise the issue of mutual mistake at an earlier time but did not do so.

{22}     Accordingly, in its discretion, and based on its review and construction of the record, the court DENIES the Motion to Amend.

IT IS SO ORDERED, this the 24th day of July, 2014.